Tlie opinion of the Court was delivered by
Manning, J.
The defendant, Porier, leased a part of a plantation from Mrs. Hart for the years 1881 and 1882, the stipulated rent being *1102 sixty bales cotton of a specified weight and grade, of which forty were to be delivered to the lessor, at the gin house of the plantation, during October, November and December of the first year, and the residue at the same place and time of the second year. Mrs. Hart sold and.transferred this lease to the plaintiff, Dillon, with subrogation to all her rights as lessor. J. C. Soape was her commission merchant, and Dillon agreed that he should have the selling of this rent cotton.
On October 3,1881, Dillon instituted this suit, and obtained a writ of provisional seizure, under which twenty seven bales of pressed cotton and five in seed and five in lint, and four mules, their harness, and a wagon, were seized, the appraised value of the whole being $2,275. The property was released on bond, with Soape as surety, and in answer to the suit, the seizure was alleged to have been malicious, and it was denied that the plaintiff liad reason to believe or fear a removal of the cotton. The defendant also averred that no part of the rent was due when the suit was instituted, and prayed for $2,250 as damages.
Lessors can use the writ of provisional seizure to secure the payment of rent not due, as well as that which is due, the only difference being in contingent liability for costs in certain events. Code of Practice, Art. 287. The question here is, whether the plaintiff had good reason to believe that the lessee would remove the property from the leased premises, and was thus justified in using the writ.
Failure to pay the rent has been' held to constitute good grounds for believing that the tenant will not pay, and will remove the property. Heirs of Lalaurie vs. Woods, 8 An. 366 ; Shiff vs. Ezekiel, 23 An. 383.
About the time Dillon was contemplating the probable necessity for seizure, nine bales of cotton were sent by Porier to Soape, for Dillon’s ■ account. He seems to have apprehended that was all that would be sent. The suit was filed, and Dillon accompanied the sheriff to the plantation, for the purpose of ascertaining with reasonable certainty whether the quantity of cotton necessary to pay the rent was to be sent to Soape for him. ITe could get no satisfaction. Porier was sullen and angry. Dillon directed the sheriff to execute his process. Porier, as a witness, swears he intended to deliver enough cotton to pay his rent, and Soape knows of no reason for Dillon to believe or think or fear the contrary. Soape was the factor of Porier, and his creditor for supplies, and "would have held the latter’s cotton for Dillon’s account, if' so instructed by Porier specially ; but otherwise, would have placed proceeds of its sale tó his own account against the defendant. This was just what Dillon feared. It was not at all unreasonable or unnatural for Dillon to believe, that Porier, in sending the cotton to Soape, as all agreed was to be done, should either negli *1103 gently or purposely omit any instruction as to its destination, and in that event, Soape says he should have looked after his own interest.
Dillon and Soape had each a privilege. The enforcement of Dilloji’s would depend on the non-amotion of the cotton,'or his ability to pursue it within a given time. He, was not obliged to run any risk. He had a right to seize, and the whole testimony negatives the charge of malice.
Our law wisely provides. the lessor with drastic remedies for a lessee’s failure to pay his rent, and it is as much in the interest of the one as of the other. Tenants are more numerous than proprietors. He who has no house of his own to shelter his family, or no land of his own to cultivate, has need to use that of others, and can more easily obtain it and on easier terms if the law assures the landlord the payment of his rent by affording.him exceptional facilities for enforcing its payment. Hence, the conditions under which,a lessor may use the writ of provisional seizure differ from those attending the other, conservatory writs. .
• Fraudulent intent on the part of the lessee is not an essential element in such case. Nay, the best and- most honest intent will not avail him, because the crucial inquiry is, not whether the tenant did or did not intend to pay his rent, but whether he intended to remove the property upon which the privilege rests of securing its payment. •The lessor has good reason to believe that the lessee will remove from the premises the property upon which he has a privilege, and thereby deprive him of his lien, the sole condition for the issuance of the writ exists. The intention of the lessee in removing it may be honest-. His purpose may be thus to obtain the means for paying the rent, but that in nowise impairs the right of the landlord to prevent the removal by a seizure. While on the premises, it is absolutely subject to the landlord’s claim. If removed, he has only a limited time to pursue-it, and only-while owned by his tenant. The law, therefore, does not require that he shall concern himself about his lessee’s honest intent to pay, but only whether Ms intent is to remove the property and destroy the lien, whether the motive of the removal be good or bad.
Tiie plaintiff did no more than use process provided expressly for the better security of landlords,.and so the lower court adjudged.
Judgment affirmed.
Fenner, J., not being present at the argument, takes no part in this decision.